IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM AYALA,
   Plaintiff,

            v.

QUIKTRIP CORPORATION and
MIKAYLA JORDAN,
   Defendants.

Civil Action No.
1:24-cv-05290-SDG

## OPINION AND ORDER

In September 2023, Plaintiff Wiliam Ayala was punched in the face by a person loitering outside of a store owned by Defendant QuikTrip Corporation (QT). Ayala filed suit, contending that QT, as well as QT employee Mikayla Jordan, breached their duties to him as an invitee on the premises. Jordan now moves to dismiss, and QT seeks summary judgment. After careful consideration, Jordan's motion to dismiss [ECF 20] and QT's Motion for Summary Judgment [ECF 21] are both **GRANTED**.

## I.    Background

Ayala first filed this action in the State Court of Clayton County, Georgia on October 2, 2024,[1] naming QT, Jordan, and his unknown assailant, referred to as

---

[1]    The state court complaint was styled as *William Ayala v. QuikTrip Corporation, Mikayla Jordan, and John Doe*, Civil Action File No. 2024CV05468. *See* ECF 1, ¶ 2.

John Doe, as Defendants.[2] QT and Jordan timely removed.[3] In their notice of removal, Defendants assert that Jordan's citizenship should be disregarded for purposes of determining diversity jurisdiction because Ayala has no possibility of recovery against her, making Jordan's joinder fraudulent.[4] Ayala did not move to remand, and the case progressed through discovery. On July 18, 2025, Jordan filed her motion to dismiss, and QT filed its motion for summary judgment.[5] Ayala did not respond to the motion to dismiss.

For purposes of the summary judgment motion, unless otherwise noted, the following facts are undisputed or are supported by undisputed evidence in the record. On or about September 23, 2023,[6] Ayala visited a QT store located within

---

[2] As a general matter, fictitious-party pleading is not permitted in federal court. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Here, the Complaint does not even assert claims against the John Doe assailant. Accordingly, John Doe is **DISMISSED** as a party to this action. The Court will refer to the unidentified assailant as "Doe" whenever necessary.

[3] ECF 1, ¶¶ 2, 4; ECF 1-2, at 2.

[4] ECF 1, ¶ 9.

[5] ECFs 20, 21.

[6] Ayala's Complaint states that the incident occurred on September 18, 2023. ECF 1, ¶¶ 8, 10. However, QT's Statement of Material Facts suggests that the incident occurred on September 23, 2023, by referencing statements QT employee Christina Capps made in an affidavit. *See* ECF 21-1, ¶¶ 8–25 (citing ECF 21-3). Ayala did not dispute these references to September 23. ECF 23, ¶¶ 11–25. QT's security camera images are timestamped as September 18, 2023, *see* ECF 21-3, and Ayala's deposition testimony discusses the incident as occurring on September 18, 2023, *see* ECFs 26–27. No party has raised an issue with the parties' conflicting use of these two dates. Because the undisputed

walking distance from his apartment.[7] He visited this QT location five to seven times per week and was familiar with the area.[8] Ayala considered the area around the store "sketchy" and "unsafe" because it was frequented by unhoused persons and persons experiencing mental health episodes.[9] He had also previously seen individuals try to steal from the QT store.[10]

As of September 18, 2023, there were more than 25 properly-functioning video surveillance cameras at this QT location, and QT used off-duty City of Atlanta police officers to provide security.[11] An off-duty police officer provided security for this QT location between the hours of 5:30 p.m. on September 22, 2023 and 6:30 a.m. on September 23, 2023.[12] Additionally, Midtown Blue, a program that provides specially-trained security professionals in Midtown Atlanta, has an office next to the QT store.[13] On September 23, at 6:50 a.m., a Midtown Blue Public

---

Statement of Material Facts uses the September 23 date, the Court treats the incident as having occurred on September 23, 2023.

[7]    ECF 21-1, ¶¶ 1, 16.

[8]    *Id.* ¶¶ 2–6.

[9]    *Id.*

[10]   *Id.* ¶ 6.

[11]   *Id.* ¶¶ 7–8. Ayala asserts that these facts are "disputed" but he does not explain why, nor does he provide any specific citations to evidence or other support. ECF 23, at 2–3. Accordingly, these facts are deemed admitted. L.R. 56.1(B)(2)(a)(2), NDGa.

[12]   ECF 21-1, ¶ 8.

[13]   *Id.* ¶¶ 9, 10.

Safety Officer entered the store, and he escorted Doe out of the store at 6:52 a.m.[14]

Doe came back to the store at about 6:56 a.m.[15]

At some point, Ayala also entered the store and observed Doe while Ayala waited behind him in the checkout line.[16] He later described Doe as someone appearing to have a "mental outbreak" because he was "arguing with the counterperson," "trying to swing [at] the counterperson," "knock[ing] some things down," and "cursing at the counterperson."[17] Doe eventually left, and Ayala purchased his items, making a point to tell the counterperson to "be careful" because Doe "could have gotcha."[18] But Ayala did not voice concern to anyone at QT about his own safety in leaving the store, nor did he call the police or ask anyone at QT to do so on his behalf.[19] Nevertheless, a QT employee called 911 about Doe even prior to him punching Ayala.[20]

---

[14]   *Id.* ¶¶ 11–13. Ayala disputes these facts but only on the grounds that "he could not recall ever seeing Midtown Blue officers in the [QT or] around the area outside of the store." ECF 23, at 3–4. He does not respond with facts or otherwise offer a sufficient response to put these facts in dispute, so the Court deems them admitted. L.R. 56.1(B)(2)(a)(2), (4), NDGa.

[15]   ECF 21-1, ¶ 14.

[16]   *Id.* ¶¶ 15–20.

[17]   *Id.*

[18]   *Id.*

[19]   *Id.* ¶¶ 21–22.

[20]   *Id.* ¶ 23.

Doe hit Ayala at 7:04 a.m., soon after Ayala exited the store.[21] Ayala had taken only "two to three steps" outside of the door before Doe ran up to Ayala, said something, and then punched him,[22] causing his nose to bleed.[23] Police were called after the incident, and they arrived at the store at about 7:54 a.m.[24]

The sidewalk where the incident occurred was not leased by QT,[25] nor is QT allowed, under the terms of its lease, to use, place, or display anything on the sidewalk or have any sales on the sidewalk.[26]

## II. The Court's subject matter jurisdiction and Jordan's motion to dismiss.

Jordan moves to dismiss on two grounds: that (1) she has never been served with process, and (2) she was fraudulently joined to defeat diversity jurisdiction.[27]

---

[21]   *Id.* ¶ 25.

[22]   *Id.* ¶¶ 15, 24–25.

[23]   ECF 21-2, at 12.

[24]   ECF 21-1, ¶ 29.

[25]   *Id.* ¶¶ 26–27. Ayala asserts that these facts are "disputed" but he does not explain why, nor does he provide any specific citations to evidence or other support. ECF 23, at 7. Accordingly, these facts are deemed admitted. L.R. 56.1(B)(2)(a)(2), NDGa.

[26]   ECF 21-1, ¶ 28. Ayala asserts that these facts are "disputed as immaterial" without providing an explanation for why. ECF 23, at 7. But they are relevant to whether the sidewalk is QT's "approach" under Georgia law and thus, to Ayala's claims. *See Martin v. Six Flags Over Georgia II, L.P.*, 301 Ga. 323, 333 (2017). Accordingly, these facts are deemed admitted. L.R. 56.1(B)(2)(a)(2), NDGa.

[27]   ECF 20, at 2–3. Jordan also argues that the Complaint makes no allegations against her because it, instead, only makes allegations against a "Mikayla Johnson." While true that the Complaint describes a Mikayla *Johnson* in its

The Court will address her second argument first because its determination affects whether the Court has subject matter jurisdiction to hear this case. Because it concludes that Jordan was fraudulently joined, the Court need not address her argument concerning insufficient service of process.

Dismissing Jordan as a party to this action is warranted for two reasons. First, it is warranted because Ayala abandoned his claims against Jordan when he did not respond to her motion to dismiss. "When a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned." *Ramsey v. Bd. of Regents of Univ. Sys. of Ga.*, 201 WL 1222492, at \*29 (N.D. Ga. Jan. 30, 2013), *aff'd*, 543 F. App'x 966 (11th Cir. 2013).

Second, the Court is independently satisfied that Jordan should be dropped from this case because she was fraudulently joined. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Federal courts possess limited jurisdiction; district courts have diversity

---

causes of action, *see* ECF 1-1, at 4–7, it also names Mikayla **Jordan** in the caption and in the introduction. *See id.* at 1–2. The Court understands the use of the name "Johnson" to be a typographical error and will not consider dismissal on this ground. *See generally Pears v. Mobile Cnty.*, 645 F. Supp. 2d 1062, 1082 (S.D. Ala. 2009) (discussing the "misnomer rule" and the correction of a defendant's name under Rule 15).

jurisdiction over civil actions where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332. Complete diversity does not exist "unless *each* defendant is a citizen of a different state from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). However, a defendant can properly remove an action where complete diversity does *not* exist *if* it can show that the non-diverse defendant was fraudulently joined. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The doctrine of fraudulent joinder applies "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction." *Id.* When this occurs, "the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Id.*

The removing party bears the "heavy burden" of establishing fraudulent joinder. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). It must prove "by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented

by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

While the standard of review is "*similar* to that used for ruling on a motion for summary judgment" because the Court can examine evidence beyond the pleadings, it is not the same:

> [F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. If there is even a possibility that a state court could find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.

*Crowe*, 113 F.3d at 1538. Further, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380. All questions of fact must be resolved in plaintiff's favor. *Legg v. Wyeth,* 428 F.3d 1317, 1323 (11th Cir. 2005). However, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id*. In other words, when a defendant presents affidavits or deposition transcripts that are undisputed by the plaintiff, "the court cannot then resolve the facts in the [p]laintiff['s] favor based solely on the unsupported allegations in the [p]laintiff['s] complaint." *Id*. Rather, the plaintiff generally must come forward with some evidence to dispute the sworn testimony submitted by the defendant in order to support remand.

*Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 871 (11th Cir. 2015) (citing *Legg*, 428 F.3d at 1323–25). In fact, a court can abuse its discretion by failing to consider sworn testimony by either party when resolving a question of fraudulent joinder. *Id.*

Here, Jordan presented an affidavit refuting many of the allegations in Ayala's Complaint. Specifically, Jordan declared that she has never been the owner or manager of the QT store where the events giving rise to this lawsuit took place.[28] She further testified that she was "not present" at any time during the "incident at issue," nor did she have any role or involvement in investigating the incident afterwards.[29] She also declared that she was never responsible for things like "determining the operating hours," "creat[ing] the policies or procedures" used by the QT store, or making repairs to premises.[30] Nor did she ever sign or have authority to sign the lease for this QT location.[31]

Ayala did not respond to the motion to dismiss for fraudulent joinder, nor has he at any other time pointed to evidence in the record that disputes Jordan's sworn testimony. Indeed, during his deposition, Ayala repeatedly said that he did

---

[28]  ECF 1-4, ¶¶ 4–6.

[29]  *Id.* ¶ 19.

[30]  *Id.* ¶¶ 11, 12, 14.

[31]  *Id.* ¶ 7.

not know the name of the QT employee who was working on the morning of the incident.[32] As such, it is undisputed that Jordan was not working at this QT location on the day of the incident, and it is further undisputed that she is not the owner or manager of this QT store. *See Legg,* 428 F.3d at 1323. Under Georgia law, liability may only be imposed against an "owner" or "occupier" of the subject premises. *See* O.C.G.A. § 51-3-1.

The Court concludes that Jordan has shown that Ayala cannot possibly establish a cause of action against her. Ayala's negligence and negligence per se claims against Jordan, based on her alleged failure to keep the premises safe on the day of the incident, cannot possibly proceed when Jordan was not working on the day at issue. *See, e.g., Glenn v. Wal-Mart Stores E., LP*, 2018 WL 11444732, at *3 (N.D. Ga. May 25, 2018) (finding joinder was fraudulent because the plaintiffs could not possibly recover from an employee who presented undisputed evidence that he was absent from the store on the day of the incident and lacked an ownership interest in the premises); *Stewart v. Circle K Stores, Inc.*, 2023 WL 2507569, at *4 (N.D. Ga. Mar. 14, 2023) (same).

Accordingly, Jordan's motion to dismiss on fraudulent joinder grounds is **granted**, and Ayala's claims against Jordan are **dismissed without prejudice**. With

---

[32]   ECF 27, at 67–69.

only QT remaining, the Court concludes that it has subject matter jurisdiction over this case. Complete diversity exists between Ayala, a citizen of Georgia,[33] and QT, a citizen of Oklahoma,[34] and the parties have sufficiently established that the amount in controversy exceeds $75,000.[35]

## III.   The Court grants QT's motion for summary judgment.

### A.   Legal standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material. *Id.* A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the court of the basis for its motion and identifying the parts of the record showing an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This evidence is viewed in the light most favorable to the opposing party, "and all

---

[33]   ECF 1, ¶ 5.

[34]   *Id.* ¶ 6.

[35]   *Id.* ¶ 12; ECF 1-1, ¶ 63; ECFs 26, 27 (describing lost wages, past and future medical expenses, and injuries sustained).

justifiable inferences are to be drawn" in its favor. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999) (similar).

If a movant meets its burden, the opposing party must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. The non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. If the evidence relied on by the non-movant is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and cannot be made by the district court. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (same, citing *Anderson*). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

**B.      Discussion**

Ayala asserts one negligence claim and one negligence per se claim against QT, both based on premises liability. However, the negligence per se claim is based on alleged violations of O.C.G.A. §§ 51-1-2 and 51-3-1;[36] these statutes cannot support a claim for negligence per se because the liability they describe is "simply the common-law liability for injury to another through negligence," and a violation of these sections "is not negligence per se." *Burns v. Colonial Stores*, 90 Ga. App. 492, 494–95 (1954); *see also Sanders v. QuikTrip Corp.*, 378 F. Supp. 3d 1177, 1194 (N.D. Ga. 2019) (holding that O.C.G.A. § 51-3-1 "cannot support a claim for negligence per se"). As such, QT is entitled to summary judgment on the negligence per se claim.

As for the negligence claim, such causes of action contain four essential elements: "[A] duty, a breach of that duty, causation, and damages." *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 557 (2019). *See also St. Jude's Recovery Ctr. v. Vaughn*, 354 Ga. App. 593, 594 (2020). O.C.G.A. § 51-3-1 governs premises liability for invitees to property:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his

---

[36]   ECF 1-1, ¶¶ 46, 47.

13

> failure to exercise ordinary care in keeping the premises
> and approaches safe.

This obligation cannot, however, be used to turn property owners into insurers of the safety of their invitees. *B-T Two, Inc. v. Bennett*, 307 Ga. App. 649, 654 (2011) (collecting cases) (physical precedent only). "It is a well-settled principle of negligence law that 'the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence.'" *Stadterman v. Southwood Realty Co.*, 361 Ga. App. 613, 615 (Oct. 26, 2021) (quoting *Wilson v. Guy*, 356 Ga. App. 509, 511 (2020); citing *Wolfe v. Carter*, 314 Ga. App. 854, 859 (2012)).

In asserting that a grant of summary judgment in its favor is appropriate, QT makes several arguments. First, it contends that there is no evidence it breached any duty owed to Ayala.[37] Second, it argues that Ayala had equal knowledge of the alleged danger posed by Doe.[38] Third, it asserts that the incident did not occur on QT's premises or approach.[39] The Court need not determine whether the incident occurred on QT's premises or approach, nor need it address the parties' relative knowledge, because summary judgment is appropriate for the first reason QT raised. *Drayton v. Kroger Co.*, 297 Ga. App. 484, 485 (2009) (affirming grant of summary judgment, even if a disputed fact question remained as to

---

[37]  ECF 21, at 7.

[38]  *Id.* at 10.

[39]  *Id.* at 13.

whether the attack occurred within an "approach" to the store, because the plaintiffs failed to introduce any evidence showing that the third-party criminal attack was foreseeable by the defendants). QT's first argument concerns the ultimate issue of whether the assailant's actions were foreseeable by QT. Because the events leading to Ayala's injury were not foreseeable, his claims cannot succeed.

"[W]here an invitee is injured by a third party's intervening criminal act, the proprietor is generally insulated from liability; an exception to this general rule arises, however, where the proprietor had sufficient reason to anticipate such criminal conduct." *Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 721 (2023). "[I]f the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters." *Id.* at 722 (quoting *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1991)). "[W]hether that duty of ordinary care embraces the specific duty to protect invitees against third-party criminal conduct hinges on foreseeability." *Id.* And whether an event was reasonably foreseeable is generally a jury question. *Id.* at 724–25.

A plaintiff can show that a criminal act was foreseeable by establishing that, under the "totality of the circumstances relevant to the premises," the proprietor had "sufficient 'reason to anticipate the criminal act' giving rise to the plaintiff's

15

injuries on the premises." *Id.* at 726. While "not susceptible to a mechanical formulation," one factor usually "central to the inquiry" is evidence of "substantially similar prior criminal activity." *Id.* at 726–27. Assessing similarity requires an inquiry into "the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question." *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (1997). "The crimes must: (1) occur at comparable locations; (2) occur under similar physical circumstances and conditions; (3) be of similar type; and (4) not be too remote in time." *Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*, 821 F. Supp. 2d 1308, 1313 (N.D. Ga. 2011). To be considered similar, the current and prior incidents need not be identical, but the prior event must "be sufficient to attract the [premises owner's] attention to the dangerous condition which resulted in the litigated incident." *Sturbridge Partners*, 267 Ga. at 786 (cleaned up) (citation omitted). Determining whether events are substantially similar is a question for the Court. *Drayton*, 297 Ga. App. at 485–86.

Here, Ayala has failed to establish under the "totality of the circumstances relevant to the premises," that QT had "sufficient 'reason to anticipate'" that a patron exiting the store would be struck by an individual outside of the store. *Carmichael*, 316 Ga. at 726. Ayala does not identify a prior incident at the QT that was "substantially similar" to the crime of which he was a victim; indeed, he does

16

not specifically identify *any* other prior criminal incidents at the QT, similar or not. While the undisputed facts establish that the area around this QT location experiences "a lot of homeless activity" and that Ayala had seen people "ask for money or try to steal" from QT,[40] these facts lack specificity, and they altogether fail to demonstrate that a substantially similar crime to what Ayala experienced has taken place at this QT location. Viewing the evidence in the light most favorable to the nonmovant, the Court cannot conclude that QT had a duty to guard against the criminal activity of which Ayala was a victim; nonviolent petty theft, such as the attempted shoplifting that Ayala testifies to observing, does not make it foreseeable to QT that someone might commit a violent crime against a patron outside of the store.

While true that proof of substantially similar incidents is not the only method of establishing foreseeability, Ayala altogether fails to present *any* evidence on this point. For example, he has not presented evidence that QT had special knowledge of Doe's temperament that would make it reasonably foreseeable to QT that this incident would occur. *Carmichael*, 316 Ga. at 732, 735. While Doe had been escorted out of the store by a Midtown Blue Public Safety Officer before coming back into the store and having the outburst that Ayala

---

[40] ECF 21-1, ¶¶ 3–6.

17

observed, nothing in the record suggests that QT knew Doe was dangerous prior to the outburst that Ayala witnessed.[41] It is also undisputed that Doe exited the store and Ayala completed his transaction as usual;[42] Doe and the QT counterperson learned of Doe's volatility at the same time, and they both witnessed him exit.[43] Ultimately, because Ayala did not present competent evidence that the criminal act committed against him was "reasonably foreseeable" under "the totality of the circumstances"—or, for that matter, any evidence at all—summary judgment in favor of QT is appropriate. *Id.*; *see also Anderson*, 477 U.S. at 248 (stating that the non-movant "must set forth specific facts showing that there is a genuine issue for trial").

## IV.    Conclusion

Jordan's Motion to Dismiss [ECF 20] and QT's Motion for Summary Judgment [ECF 21] are **GRANTED**. Ayala's claims against Jordan are **DISMISSED without prejudice** on account of the Court's finding that she was fraudulently joined. Ayala's claims against QT are **DISMISSED with prejudice**.

---

[41]    *Id.* ¶¶ 11–14.

[42]    *Id.* ¶¶ 15–25.

[43]    *Id.* It is also undisputed that a QT employee called 911 before the assault outside of the store occurred. *Id.* ¶ 23.

18

The Clerk is **DIRECTED** to enter judgment in favor of QT and to **CLOSE** this case.

**SO ORDERED** this 31st day of March, 2026.

Steven D. Grimberg
United States District Judge